# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **CHRISTA HIGGINS, individually, and** | ) | |
| **RUBEN RUBIO, individually,** | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. CIV-14-959-R |
| | ) | |
| **ALLSTATE INDEMNITY COMPANY,** | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the Court is Defendant Allstate Indemnity Company's ("Allstate") Motion for Summary Judgment. Doc. No. 38. Plaintiffs Christa Higgins and Ruben Rubio oppose the motion. Doc. No. 48.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute is genuine when a reasonable jury could find in favor of the nonmoving party on the issue." *Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 712 (10th Cir. 2014) (citations omitted). All facts and reasonable inferences therefrom are construed in the light most favorable to the nonmoving party. *Id.* at 712–13. Having considered the parties' submissions, the Court grants in part and denies in part the motion.

**I.     Background**

This claim revolves around whether Allstate properly and in good faith applied the $1,000 business limitation in Plaintiffs' renters' insurance policy to tools that Plaintiff Rubio inherited from his father.

The undisputed record evidence is as follows. On or about May 12, 2013, Plaintiffs' trailer was stolen from their premises. Doc. No. 38-2. The trailer contained tools that Plaintiff Rubio inherited from his father. Doc. Nos. 38-4; 38-5, at 26:12-25, 27:1-25, 31:4-15, 32:1-6; 38-6, at 54: 1-25; 55: 1-7, 102:22-25 & 103: 1-21.

Plaintiffs had a renters' policy issued by Allstate. Doc. No. 38-3. The policy includes a limitation for $1,000 for "[p]roperty used or intended to be used in a business . . . while the property is on the residence premises." Doc. No. 38-3. After the theft of their trailer, Plaintiffs submitted a claim to Allstate for the lost items. Doc. No. 38-4. On January 3, 2014, Attorney K. Clark Phipps, counsel for Allstate, took the Examinations Under Oath ("EUO") of Plaintiffs Rubio and Higgins. Doc. Nos. 38-5; 38-6. Both Plaintiffs were represented by counsel during the EUOs. Doc. No. 38-8, at ¶ 3.

During his EUO, Plaintiff Rubio testified that he intended to use the tools he inherited from his father for his trucking business:

> Q.     . . . So when you were there paying your respects, what property did you see that you understood was going to or could come to you?
>
> A.     *Being in the trucking business*, needing tools, I took over the basic -- all the tools.
>
> \* \* \*

> Q. Was it your intent in choosing these tools to take as your – or to claim them as your own, to use them in your business?
>
> A. Yes, sir.
>
> * * *
>
> Q. Okay. And when you chose those tool kits as -- or to claim as your own from your dad's property, you intended to use them in your business?
>
> A. Yes, sir.

Doc. No. 38-5, at 27:15-19; 31:12-15; 32:3-6 (emphasis supplied). Plaintiff Higgins similarly agreed that the tools would be used "for basic maintenance on those big 18-wheeler trucks." Doc. No. 38-6, at 102:25-103:18.[1]

Following this testimony, on January 9, 2014, Attorney Phipps advised the company that Plaintiffs testified that Rubio intended to use the tools for his trucking business. Doc. Nos. 38-7; 38-8; 38-9. Based on this testimony, Phipps advised Allstate to pay the claim subject to the business property limitation. Doc. Nos. 38-7; 38-8, ¶ 11; 38-9, at ¶ 8; 38-10. On January 15, 2014, Plaintiffs submitted jurats "stat[ing] under oath that I have read the above and foregoing EUO in its entirety and that with my corrections, if any there be, the same is a full, true and correct transcript of my testimony." Doc. Nos. 38-13 (jurat signed by Plaintiff Rubio, dated January 3, 2014); 38-14 (jurat signed by Plaintiff Higgins, dated January 3, 2014). Neither Plaintiff indicated in their jurat that they had any corrections to their testimony. *Id.*

---

[1] While Plaintiffs dispute whether Plaintiff Rubio intended to use the tools for his business, they do not dispute the cited evidence represents Plaintiff Higgins' EUO testimony. Doc. No. 48, at 7-8.

Subsequently, based on the results of the investigation, including counsel's recommendation, (Doc. No. 38-9, at ¶ 9) on January 24, 2014, Allstate notified Plaintiffs' counsel of its decision to pay the claim, subject to the business limitation. Doc. No. 38-18.

On July 25, 2014, months after receiving Allstate's decision, Plaintiffs' counsel sent an email to Allstate Adjuster Lynn Lax, attaching a statement from Plaintiff Higgins, dated July 22, 2014 (the "Higgins Letter"). Doc. Nos. 38-20; 38-21. In her written statement, Plaintiff Higgins stated:

> "I have now discussed this with Ruben Rubio. Ruben advises me that he had all of the tools necessary to perform his work before he inherited the tools from his father. He says that he was not going to use the tools he inherited from his father for business purposes. They were an inheritance from his father and were to be for his personal use only. They would not have been used for business purposes."

Doc. No. 38-21. She also claimed that her EUO testimony was based on assumptions. *Id.* The Higgins Letter does not appear to be made under oath, sworn, or otherwise verified. *Id.*

Upon its receipt, Allstate sent the Higgins Letter to Phipps. Doc. No. 38-8, at ¶ 12. On July 29, 2014, Phipps advised Allstate that the letter did not change his opinion because Plaintiff Rubio's testimony remained unchanged. Doc. Nos. 38, at 9 ¶ 15; 38-8, at ¶ 12; 48, at 5 ¶ 11. On August 5, 2014, Allstate notified Plaintiffs' counsel that it was standing on its decision that the business limitation applied. Doc. No. 38-22.

Plaintiffs then initiated this action on or around August 14, 2014. Doc. No. 1-2.[2] On July 14, 2015, Defendant took Plaintiffs' discovery depositions (the "Discovery Depositions"). Doc. Nos. 48-1; 48-3. During the Discovery Depositions, Plaintiffs testified that the tools at issue were not intended for business purposes, but for personal use. Doc. Nos. 48-1, at 113:10-14; 20-24; 48-3, at 88: 17-89:1.

Plaintiffs each provided explanations for any discrepancy between their EUO testimony, which stated the tools were intended for business purposes, and their deposition testimony, which stated the tools were intended for personal use. Plaintiff Rubio explained that he was a diabetic and that during his EUO, he experienced a "sugar attack" related to his diabetes, that these attacks make him light-headed, dizzy, and confused, and that he did not understand the examination questions. Doc. No. 48-1, at 83:12-87:17. Plaintiff Rubio testified during his Discovery Deposition that he notified the individuals present at his EUO of the onset of this diabetic episode and that the EUO was stopped at that point. Doc. No. 48-1, at 83:12-87:17. Allstate contends that the attack that Plaintiff Rubio refers to occurred at the end of the EUO, much later than his EUO testimony regarding his intended use of the tools. Doc. No. 49, at 4 (citing Doc. Nos. 38-17 at 57:49; 49-4, at 27:15; 31:12-15; 32:3-6).

During her Discovery Deposition, Plaintiff Higgins explained that her EUO testimony differed from her deposition testimony because she was confused. Doc. Nos. 38-16, at 79:1-6; 48-3, at 85:2-3.

---

[2] This action originated in the District Court of Oklahoma County, for the State of Oklahoma. Doc. No. 1-2. Defendants removed the action to this Court on or around September 8, 2014. Doc. No. 1.

After considering the parties' submissions, the Court finds as follows.

## II. Breach of Contract Claim

Allstate first seeks summary judgment on Plaintiffs' breach of contract claim. Doc. No. 38, at 17-20. To prevail on this claim, Plaintiffs must prove "1) formation of a contract; 2) breach of the contract; and 3) damages as a direct result of the breach." *Digital Design Grp., Inc. v. Info. Builders, Inc.,* 24 P.3d 834, 843 (Okla. 2001) (footnote omitted). Plaintiffs contend that Allstate breached the insurance contract by incorrectly applying the business limitation in their renters' insurance policy to tools that Plaintiff Rubio inherited from his father.

At the center of the dispute is whether Plaintiff Rubio intended to use the tools for his trucking business. Allstate contends that Plaintiffs' EUO testimony and subsequent jurats establishes that he intended to use the tools for business reasons. Doc. No. 38, at 13-16; *see also* Doc. Nos. 38-5 at 26:12-25, 27:1-25, 31:4-15, 32:1-6; 38-6, at 54:1-25; 55:1-7,102:22-25 & 103:1-21; 38-13; 38-14. Plaintiffs, in contrast, contend that Plaintiffs' Discovery Deposition testimony and Plaintiff Higgins' July 22 Letter show that Plaintiff Rubio intended to use the tools for personal use. Doc. No. 48, at 12-14; Doc. Nos. 38-20; 38-21; 48-1, at 113:10-14; 20-24; 48-3, at 88: 17-89:1.

Plaintiffs also provide an explanation for why their subsequent testimony contradicts their EUO testimony. Plaintiff Rubio explains that he experienced a diabetic attack during his EUO, making him confused and dizzy, though the audio recording of the EUO captures Plaintiff Rubio making diabetes-related complaints at the end of his deposition, not during the testimony at issue, and that he repeatedly told counsel that he

6

was "okay." Doc. No. 38-15, at 78:2-25,79: 1-25,80: 1-25,81 :2-25,83: 1-25,84: 1-25, 85:1-25,86:1-26; 87:1-21,91:25,92:1-10 & 123:5-13; 83:12-87:17; 48-3, at 80:2-4; Doc. No. 38-17. Plaintiff Higgins explains she found the questions during the EUO confusing and was responding based on her assumptions. Doc. Nos. 38-21; 38-16, at 79:1-6; 48-3, at 85:2-3.

This dueling evidence is sufficient to create a genuine issue of material fact as to whether the tools were intended for business or personal use. Although Plaintiffs' contradictory statements and explanations suffer from credibility concerns, weighing the contradictory statements along with the explanations for those contradictions are judgments of credibility appropriately made by a finder of fact and not a court deciding summary judgment.

Because, at the summary judgment stage, the Court is constrained to construe all facts and reasonable inferences therefrom in the light most favorable to Plaintiffs, *Macon*, 743 F.3d at 712-713, Allstate's Motion for Summary Judgment as to Plaintiffs' breach of contract claim must be denied.

### III. Claim for Breach of Duty of Good Faith and Fair Dealing

Allstate also seeks summary judgment on Plaintiffs' claim for breach of the duty of good faith and fair dealing, otherwise referred to as a "bad faith claim." Doc. No. 38, at 16-23. To prevail on their bad faith claim, Plaintiffs must prove that (1) they were entitled to coverage under the insurance policy, (2) Allstate had no reasonable basis for delaying payment, (3) Allstate did not deal fairly and in good faith with Plaintiff, and (4) Allstate's violation of its duty of good faith and fair dealing was the direct cause of Plaintiff's

injury. *Ball v. Wilshire Ins. Co.,* 221 P.3d 717, 724 (Okla. 2009). Thus, "the critical question in a bad faith tort claim is whether the insurer had a 'good faith belief, at the time its performance was requested, that it had a justifiable reason for withholding payment under the policy.'" *Id.* (quoting *Newport v. USAA*, 11 P.3d 190, 195 (Okla. 2000)). "The knowledge and belief of the insurer during the time period the claim is being reviewed is the focus of a bad-faith claim." *Newport*, 11 P.3d at 195 (internal quotations and citations omitted).

No reasonable inference of bad faith exists where an insurer denies the claim as a result of a legitimate dispute. *Bannister v. State Farm Mut. Auto. Ins. Co.*, 692 F.3d 1117, at 1127 (10th Cir. 2012). A dispute is not legitimate, however, if the insurer's decision was premised on an inadequate investigation. *Id.* at 1128. For the question of bad faith based on an inadequate investigation to reach the jury, the evidence must "suggest a sham defense or an intentional disregard of uncontrovertible facts." *Id.* (internal quotations and citations omitted).

No such evidence exists here. Rather, the undisputed evidence shows that as part of its investigation, Allstate engaged counsel to review the claim file, take Plaintiffs' EUOs, and issue a coverage opinion. Doc. No. 38-9, at ¶ 5. Allstate then relied on Plaintiffs' testimony during those examinations, unchanged by their jurats, that Plaintiff Rubio intended to use the tools at issue in his business. *See* Doc. No. 38-9; *see also* Doc. Nos. 38-5, at 27:15-19; 31:12-15; 32:3-6; 38-6, at 102:25-103:18; 38-13; 38-14. The evidence also shows that Allstate revisited its decision upon receipt of the Higgins Letter, which sought to clarify Plaintiff Higgins' testimony regarding her understanding of

Plaintiff Rubio's intended use of the tools. Doc. Nos. 38-8, at ¶12; 38-11, 58:2-24; 122:1-15. The evidence further shows that Allstate determined that this clarification did not alter Plaintiff Rubio's own testimony that he intended to use the tools for business. Doc. Nos. 38, at 9 ¶ 15; 38-8, at ¶ 12; 48, at 5 ¶ 11. Allstate was entitled to consider all of the evidence before it and decide the business limitation applied. That Allstate did not defer to Higgins' unsworn statement about her understanding of Plaintiff Rubio's intent, which contradicted Plaintiff Rubio's own testimony and was sent months after Plaintiffs' EUO testimony and Allstate's initial determination, does not show that Allstate acted in bad faith. *See AG Equip. Co. v. AIG Life Ins. Co.*, 2009 WL 166806, at *8 (N.D. Okla. Jan. 21, 2009) (fact that insurer did not defer to plaintiff's assessment did not show it acted in bad faith).

Nor does the Court agree with Plaintiffs that Allstate failed to meet its duty to investigate because it failed to consider that Plaintiff Rubio inherited two sets of tools, and that only one set could be used in Plaintiff Rubio's business. The focus on an adequate investigation is on the information known to the Allstate "during the time period the claim is being reviewed." *Newport*, 11 P.3d at 195 (internal quotations and citations omitted). Plaintiffs offer no evidence that they raised this issue with Allstate during its investigation into Plaintiffs' claim.

Finally, Plaintiffs also contend that the application of the business limitation was an impermissible "low-ball" offer done in bad faith. Doc. No. 48, at 18. Consistent with the above, the Court finds that this claim fails as well. *See Dunbar v. State Farm Mut. Auto. Ins. Co.,* No. 10-CV-330-GKF-TLW, 2011 WL 5878383, at *11 n. 6 (N.D. Okla.

Nov. 23, 2011) ("A legitimate disagreement as to the claim amount, without any evidence of purposeful 'low balling,' does not amount to 'bad faith.'") (citations omitted).

Accordingly, the undersigned grants summary judgment to Allstate on Plaintiffs' bad faith claim.[3]

## IV. Punitive Damages

Because the Court grants summary judgment to Allstate on Plaintiffs' bad faith claim, it need not reach the issue of punitive damages. *See Duensing v. State Farm Fire & Cas. Co.*, 131 P.3d 127, 138 (Okla. Civ. App. 2006) ("There can be no punitive damage award where there is no bad faith award.") (internal quotations and citations omitted).

## V. Conclusion

For the foregoing reasons, Allstate's Motion for Summary Judgment (Doc. No. 38) is hereby **GRANTED IN PART AND DENIED IN PART.**[4]

IT IS SO ORDERED this 23rd day of November, 2015.

_____
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE

---

[3] Because the Court found there is no genuine issue of material fact as to Allstate's bad faith, it need not reach the parties' arguments regarding Allstate's defense of advice of counsel.

[4] **Initially, Allstate also moved for summary judgment on a "failure to procure" claim. Doc. No. 38, at 25. Plaintiffs have clarified that they are not asserting a failure to procure claim. Doc. No. 48, at 19-20. Accordingly, the Court need not address any "failure to procure."**